UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JLNW, Inc.,

          Plaintiff,

—v—

National Retirement Fund,

          Defendant.

---

National Retirement Fund, *et al.*,

          Plaintiffs,

—v—

JLNW, Inc., *et al.*,

          Defendants.

---

17-cv-5095 (AJN);
18-cv-9156 (AJN)

OPINION AND
ORDER

ALISON J. NATHAN, District Judge:

    These actions arise from a first suit brought by JLNW, Inc. (formerly known as Carole Wren, Inc.) ("Carole Wren"), against National Retirement Fund (the "Fund") challenging an arbitration award in the Fund's favor under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.* (2012). The Fund then brought a second action against Carole Wren for collection of missed payments that the Fund alleges it was due. In the first action, which the Court will refer to as the "Arbitration Action," Carole Wren has moved to vacate the arbitral award. In the second action, which the Court will refer to as the "Collection Action," the Fund has moved for judgment on the pleadings. For the reasons given below, the Court DENIES Carole Wren's motion and GRANTS the Fund's motion.

1

I. **FACTUAL BACKGROUND**

As Carole Wren's motion to vacate the arbitration award concerns a pure matter of statutory interpretation for which little factual background is necessary, the Court draws the following facts here from the briefing in the Collection Action. These undisputed facts are drawn from the Fund's complaint in the Collection Action, Carole Wren's answer, and documents attached to and incorporated by reference in the complaint. *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (in resolving a motion for judgment on the pleadings, a court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").

A. **The Fund's Assessments of Carole Wren's Withdrawal Liability**

The Fund is a multiemployer pension fund under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (2012). As an employer, Carole Wren contributed to the Fund. 18-cv-9156, Compl. ¶ 11; 18-cv-9156, Answer ¶ 11. After Carole Wren completely withdrew from the Fund, the Fund made an initial assessment of Carole Wren's withdrawal liability on June 16, 2019. Compl. ¶ 12; Answer ¶ 12. The first assessment was based solely on Carole Wren's complete withdrawal. Compl. ¶ 12; Answer ¶ 12. On August 21, 2014, through counsel, Carole Wren requested a review of the original assessment of liability. Compl. ¶ 13; Answer ¶ 13. The Fund subsequently issued a revised assessment on August 18, 2015, which included liability not only for the final, complete withdrawal, but also for three "partial" withdrawals in 2005, 2012, and 2013. Compl. ¶ 14; Answer ¶ 14. Carole Wren then initiated an arbitration under the MPPAA on April 29, 2016, to challenge the Fund's liability assessment. Compl. ¶ 19; Answer ¶ 19. The Arbitrator decided the severed issue of whether 29 U.S.C. § 1405 limits Carole Wren's liability as to the partial withdrawals, ruling that

it did not. Compl. ¶ 27; Answer ¶ 27.

On October 11, 2016, the Fund issued a second revised assessment of liability for both the partial withdrawals and the complete withdrawal. Compl. ¶ 21; Answer ¶ 21. Carole Wren has paid all the installments of the withdrawal liability based on the Fund's assessments from August 1, 2014, through February 1, 2017. Compl. ¶ 30; Answer ¶ 30. However, Carole Wren subsequently missed a series of payments called for in the Fund's second revised assessment. Compl. ¶ 31; Answer ¶ 31.

**B.     The Fund's Request for Information and Carole Wren's Response**

In a March 28, 2018 Letter ("March 2018 Letter"), the Fund requested various pieces of information about Carole Wren's situation from 2014 onwards. Dkt. No. 19-10. For example, the letter asks Carole Wren to "[p]lease indicate whether the Company or a Controlled Group Member has made at any time from 2014 through the present, or currently plans to make, an assignment for the benefit of creditors." *Id.* at 3. In response, Carole Wren sent a letter on April 26, 2018 ("April Letter"), which directed the Fund to a previous letter sent on February 12, 2014, stating that this earlier letter would "provide[] most, if not all, of the information requested in your March 28, 2018 letter." Dkt. No. 19-12. The April 2018 Letter went on to state that the Fund "has been provided with reams of documents providing evidence of the Company's sale of all its assets and the value of those assets after the sale." *Id.* The April 2018 Letter also states that "[v]irtually all of the money received from the sale of the assets has been used to pay the interim withdrawal liability payments and to pay legal fees relating to the Company protecting its right to challenge the improper withdrawal liability assessment." *Id.* The letter closes with "[p]lease contact me if you need further information." *Id.* The parties agree that both letters are incorporated by reference in Carole Wren's Complaint. Dkt. No. 23 ¶ 18; Dkt. No. 26 at 8.

## II. PROCEDURAL BACKGROUND

On July 6, 2017, Carole Wren brought its complaint in the Arbitration Action, seeking a vacation of the arbitral award. 17-cv-5095, Dkt. No. 1. The Fund moved to dismiss on October 27, 2017. 17-cv-5095, Dkt. No. 14. On September 28, 2018, the Court denied the Fund's motion. 17-cv-5095, Dkt. No. 24.

On October 5, 2018, the Fund and the Board of Trustees of the National Retirement Fund brought the Collection Action against Carole Wren and John Does 1-10, which are "all trades or businesses under common control with JNLW, Inc." 18-cv-9156, Dkt. No. 1.[1] On October 10, 2018, this Court accepted the Collection Action as related.

On November 26, 2019, the Court issued a briefing schedule according to which the parties would simultaneously brief Carole Wren's motion to vacate and the Fund's motion for judgment on the pleadings. 18-cv-9156, Dkt. No. 16. By January 29, 2019, the two motions were fully briefed. 18-cv-9156, Dkt. No. 27.

## III. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Security Services, Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995). Thus, the moving party must "clearly establish[] that no material issue of fact remains to be resolved." *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, et al., Federal Prac. and Pro., § 1368 (3d ed. 1998)). On a Rule 12(c) motion, the moving

---

[1] For the purposes of these related motions, the Court will refer to both the Fund and the Board of Trustees of the National Retirement Fund as the "Fund," and Carole Wren and the John Does as "Carole Wren," unless otherwise specified.

4

party "impliedly admits the truth of its adversary's allegations and the falsity of its own assertions that have been denied by that adversary." *Id.* (quoting Wright & Miller § 1370). The Court must "accept[] all of the non-movant's factual allegations as true and draw[] all reasonable inferences in the non-movant's favor." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, factual allegations will not be credited if they are "contradicted by more specific allegations or documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

### B. Motion to Vacate Arbitration

On a motion to vacate an arbitration conducted under the MPPAA, a court reviews questions of law *de novo*. *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 160 (2d Cir. 2012). As to findings of fact, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c).

## IV. DISCUSSION

The Court turns first to Carole Wren's motion to vacate arbitration and then the Fund's motion for judgment on the pleadings.

### A. Carole Wren's Motion to Vacate the Arbitration is Denied

Carole Wren seeks review of the Arbitrator's decision that 29 U.S.C. § 1405(a)(1) does not limit Carole Wren's withdrawal liability for its three partial withdrawals. The core dispute between the parties is whether, when an employer withdraws from a plan as the result of a bona fide sale, § 1405(a)(1) limits liability only for the withdrawal that was caused by the bona fide sale, or whether it caps all of the employer's withdrawal liability, including liability for previous

5

partial withdrawals that occurred pre-sale. For purposes of this motion, the parties do not dispute that Carole Wren's sale in 2014 was bone fide within the meaning of the statute. Dkt. No. 39 at 11. Nor do they dispute that the partial withdrawals in 2005, 2012, and 2013, were not attributable to the 2014 sale. *Id.* at 13. Accordingly, this motion presents a pure question of statutory interpretation.

To determine the meaning of § 1405(a)(1), the Court "look[s] first to the language of the statute itself." *United States v. Gray*, 642 F.3d 371, 375 (2d Cir. 2011) (internal quotation marks omitted). In doing so, the Court "review[s] the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *Id.* (quoting *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir.2010)). The statutory provision reads:

> In the case of bona fide sale of all or substantially all of the employer's assets in an arm's-length transaction to an unrelated party . . . the unfunded vested benefits allocable to an employer (after the application of all sections of this part having a lower number designation than this section), other than an employer undergoing reorganization under Title 11 or similar provisions of State law, shall [be limited in the following ways].

29 U.S.C. § 1405(a)(1). "[U]nfunded vested benefits allocable to an employer" refers to withdrawal liability. Carole Wren contends that because there is no qualification to "unfunded vested benefits allocable to an employer," it refers to the sum total of withdrawal liability for all previous withdrawals, even those pre-sale. Yet this contention is refuted by the text of the statute. "[U]nfunded vested benefits" is qualified by the instruction that it is calculated "after the application of all sections of this part having a lower number designation that this section." *Id.* "[T]his part" refers to sections 1381 through 1405 of the statute. These sections set out a multi-step analysis for calculating withdrawal liability. 29 U.S.C. § 1381(b). Crucially, one of the steps provides for a "reduction for partial withdrawal liability":

> In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year.

*Id.* § 1386(b)(1). Accordingly, the amount of "unfunded vested benefits allocable to an employer" described in § 1405(a)(1) must already have been reduced by the amount of liability for previous partial withdrawals—contingent on any abatements or reductions, which neither party contends are applicable here. Accordingly, § 1405(a)(1) does not cap the sum total of all liability for all previous withdrawals, since prior partial withdrawals have already been factored out.

This reading is further supported by the interpretation of the Pension Benefit Guaranty Corporation (PBGC), the agency charged with the interpretation of the statute. In an opinion letter, the PBGC stated that "section 4225(a) applies only when the withdrawal is 'attributable to' a sale of assets, and not when the sale and the withdrawal are merely coincidental." PBGC Opinion Letter 88-2 (Mar. 22, 1988), https://www.pbgc.gov/sites/default/files/legacy/docs/oplet/88-2.pdf.[2] PBCG opinion letters are not afforded *Chevron* deference. *See Structure Tone, Inc. v. New York City Dist. Council of Carpenters Pension Fund*, No. 17-cv-2917 (RJS), 2018 WL 1633768, at *6–7 (S.D.N.Y. Mar. 30, 2018); *see generally Hill v. Delaware N. Companies Sportservice, Inc.*, 838 F.3d 281, 290 (2d. Cir. 2016) (typically "opinion letters ... do not warrant *Chevron*-style deference"). However, such letters are worthy of *Skidmore* deference, relative to "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the

---

[2] The Court takes judicial notice of this opinion letter issued by a federal agency. *See, e.g., Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002)) (a court may take judicial notice of public records).

7

agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 149-50 (1944)) (citations omitted)).

In this case, the PBCG opinion performs a quick analysis, focused on what it considers reasonable in light of the language and purpose of the statute, as well as the statute's legislative history. PBGC Opinion Letter 88-2. In light of the PBGC's "accumulated expertise" and the "undeniably complicated nature of organizing and mastering" such plans, the agency's opinion merits some persuasive deference. *Pineiro v. Pension Benefit Guar. Corp.*, 318 F. Supp. 2d 67, 91 (S.D.N.Y. 2003) (citing *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651–52 (1990)). Accordingly, the PBGC's interpretation of § 1405 lends some further support to the Court's conclusion.

For the reasons given above, Carole Wren's motion to vacate the arbitration is DENIED. Since Carole Wren brought the Arbitration Action solely as a challenge to the Arbitrator's conclusion regarding 29 U.S.C. § 1405, 17-cv-5095, Dkt. No. 8, this Opinion and Order resolves that matter in its entirety.

### B. The Fund's Motion for Judgment on the Pleadings is Granted in Part

Turning now to the Fund's motion, it moves for judgment on the pleadings in the Collection Action on the grounds that as a matter of law: (1) the Fund is entitled to Carole Wren's missed installment payments; (2) Carole Wren has defaulted on its withdrawal liability and the Fund is accordingly entitled to the entire amount of the withdrawal liability immediately; and (3) the Fund is entitled to the information requested in its March 2018 Letter. Carole Wren counters that factual disputes remain that preclude judgment on the pleadings. For the reasons given below, the Court grants this motion in part and denies it in part.

### 1. The Fund is Entitled to Interim Liability for Carole Wren's Missed Payments

Under the MPPAA, while an arbitration over withdrawal liability is ongoing, an employer must still make all of the withdrawal liability installment payments called for in the plan payment schedule. *See* 29 U.S.C. § 1399(c)(2) ("[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule"); 29 U.S.C. § 1401(d) ("[p]ayments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration"). The Supreme Court has characterized this system as "pay now, dispute later." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 198 (1997).

Under this framework, Carole Wren is liable for the interim payments. "To succeed on a claim for interim withdrawal liability payments, a plan sponsor ordinarily needs to show only that it complied with statutory procedural requirements." *Trs. Of Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, No. 03-cv-4530 (PKC), 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004). This is a low bar, since the statute requires the plan to do the following: "(1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." *Id.* at *2 (citation omitted) (quoting *Bowers v. Transportes Navieros Ecuadorianos (Transnave)*, 719 F. Supp. 166, 172 (S.D.N.Y. 1989)). There is no dispute that the Fund has satisfied these requirements. Compl. ¶¶ 12-18, 21-24; Answer ¶¶ 12-18, 21-24. Nor does Carole Wren dispute that the missed installment payments amount to a total of $841,231.23. Dkt. No.

18 at 14. Instead, Carole Wren's only argument as to the interim payments is that it would be inequitable to require Carole Wren to make the interim payments if the Court ultimately vacates the arbitral award. Wren Opp. Dkt. No. 24, at 24-25. The mandatory language of the statute, however, does not permit such discretion. Nor would the Court exercise such discretion if it had it, as Carole Wren has pointed to no reason that would exempt it form the standard mechanism. Accordingly, the Court concludes that as a matter of law, Carole Wren is liable for $841,231.23 in missed installment payments.

### 2. The Fund is Not Entitled to Judgment on the Pleadings as to Whether Carole Wren Defaulted

The Fund contends that Carole Wren defaulted on the entirety of its withdrawal liability by failing to respond to the March 2018 Letter. Under the terms of the relevant Trust Agreement, default occurs if "the Employer fails to provide [the Fund] with its response to the [Fund's] request for information under Section 4219(a) of ERISA without reasonable explanation." Dkt. 19-11 at 21. Carole Wren counters that this issue cannot be determined on a motion for judgment on the pleadings. The Court agrees with Carole Wren.

The Court begins with the text of the Trust Agreement. *See In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013). Under the Trust Agreement, Carole Wren was required only to provide a "response," and the agreement does not qualify that term, which suggests a broad meaning. Dkt. 19-11 at 24. The dictionary definition of "respond" is similarly broad, including "to say something in return" and "make an answer." *Respond*, Merriam-Webster Online Dictionary (July 19, 2019), https://www.merriam-webster.com/dictionary/responding. There is no indication from the text of the Trust Agreement that such response must be full and complete. Furthermore, given that the purpose of this provision is to determine whether the employer is in default, which in turn requires the employer to pay the entirety of the withdrawal liability

10

immediately, it is implausible that a merely insufficient response would result in such serious consequences. Accordingly, the text and purpose of the Trust Agreement indicate that Carole Wren was only required to provide some form response.

Under this standard, drawing all reasonable inferences in Carole Wren's favor, its April 2018 Letter plausibly constituted a response to the Fund's March 2018 Letter. The Fund does not deny that the April 2018 Letter answered the March 2018 Letter, but rather challenges only the sufficiency of that answer. Yet the sufficiency of the April 2018 Letter turns not just on its text, but whether the letter pointed to information that would be sufficiently responsive to the Fund's questions as to constitute a response under the Trust Agreement's broad definition. In its Answer, Carole Wren denied that it had failed to provide the information requested in the Fund's March 2018 Letter, which the Court must accept on the Fund's motion for judgment on the pleadings. Ans. ¶ 33.

Furthermore, the April 2018 Letter states that answers previously given in 2014 should provide "most, if not all, of the information requested." Dkt. No. 23-11 at 1. Thus, while Carole Wren responded to requests for current information by pointing to previous information from four years before, drawing all available inferences in Carole Wren's favor, this information was plausibly still current enough in 2018 to provide the information requested by the Fund. Similarly, the April 2018 Letter refers the Fund to "reams of documents providing evidence of the Company's sale of all its assets and the value of those assets after the sale." *Id.* It is an available inference that these materials, which are not before the Court, plausibly provided further responsive information. Finally, the April 2018 Letter closed with "contact me if you need further information." Dkt. No. 23-10, at 1. Drawing all available inferences in Carole Wren's favor, this was plausibly a good faith offer to provide any information that the April

11

2018 Letter had omitted. While the Court does not hold that any answer, no matter how insufficient, could qualify as a response under the Trust Agreement, at this stage, it is a reasonable inference from the pleadings and the letter that the April 2018 Letter was sufficiently responsive to meet the Trust Agreement's broad definition.

The Fund also requests that the Court order Carole Wren to provide the information requested in the March 2018 Letter. Yet as the Court is unable to determine at this stage that Carole Wren failed to provide the information, any such order would be premature.

### 3. Calculation of Damages

Turning now to damages, for an action to collect withdrawal liability under 29 U.S.C. § 1451, if "a judgment in favor of the plan is awarded, the court *shall* award the plan":

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph A, (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added). While the Court grants the Fund judgment only on the pleadings in part, the Fund asserts and Carole Wren does not dispute that under the "pay now, dispute later" approach, the additional damages under § 1451 are immediately available for the missed installment payments. Dkt. No. 18 at 21-22. The Court addresses each of these calculations in turn.

The Fund asserts that it is entitled to one percent interest under its own Collections Policy. Compl. ¶ 44. However, Carole Wren denies this allegation, and the Collection Policy is not before the Court. Similarly, the Fund asserts that it is entitled to liquidated damages, but does not indicate the plan under which these damages would be calculated. Compl. ¶ 45. Therefore, by no later than two weeks from the date of this Opinion and Order, the Fund shall

file with the Court documents sufficient to determine the relevant rate of interest, and the availability of liquidated damages, if any, under the plan.

Finally, as to attorneys' fees and costs, the Fund shall also provide to the Court an accounting of the expenses, costs, and attorneys' fees. This shall include a statement of itemized out-of-pocket costs, an affidavit from counsel that details the time spent by the relevant attorneys, and contemporaneous time sheets for the time claimed

### 4. Post-Judgment Discovery

The Fund also requests post-judgment discovery to allow the Fund to determine whether it can recover the money that it is owed immediately. "[B]road post-judgment discovery in aid of execution is the norm in federal . . . courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). The scope of such discovery is "constrained principally in that it must be calculated to assist in collecting on a judgment." *Id.* (citing Fed. Rule Civ. Pro. 69(a)(2)). Carole Wren contends that there is "no reason the Court needs to exert its resources to oversee discovery on collection and recovery, when the pending Arbitration will address these and other issues after the Appeal is decided." Dkt. No. 24 at 30.

However, under the "pay now, dispute later" framework of the MPPAA, there is no need to wait for the outcome of the pending arbitration for this Court's Opinion and Order to be enforced as to the missing installment payments. Furthermore, given the amount of unpaid liability assessed and Carole Wren's own admission that it has expended virtually all of its assets, Dkt. No. 19-12, the Court sees good reason why such post-judgment discovery would be necessary to assist in collecting on the instant judgment. The parties shall therefore meet and confer and within two weeks of the date of this Opinion and Order shall submit a joint proposed

discovery schedule for post-judgment discovery.

## V. CONCLUSION

For the reasons given above, Carole Wren's motion to vacate the arbitration is hereby DENIED. The Fund's motion for judgment on the pleadings is hereby GRANTED in part and DENIED in part. As oral argument is unnecessary to the resolution of these motions, the requests for oral argument are DENIED. Within two weeks of the date of this Opinion and Order, the Fund shall submit the documents necessary to calculate the relevant rate of interest, liquidated damages, and attorneys' fees and costs. Finally, within two weeks of the date of this Opinion and Order, the parties shall meet and confer and submit a joint proposed discovery schedule for post-judgment discovery.

This resolves docket items numbers 37 and 43 in 17-cv-5095 and docket items numbers 17 and 28 in 18-cv-9156. The Clerk of Court is directed to enter judgment in 17-cv-5095 and to mark it as closed. An initial pretrial conference in 18-cv-9156 will be scheduled by separate order.

SO ORDERED.

Dated: September 23, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge